UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CAROLYN  D. BENOIT** | **CIVIL ACTION NO:** _____ |
| **VERSUS** | **JUDGE:** |
| **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, and  L'OREAL USA, INC., and SALONCENTRIC, INC., and L'OREAL USA REWARDS as Plan Administrator for the SALONCENTRIC, INC. COMPREHENSIVE WELFARE BENEFITS PLAN** | **MAGISTRATE JUDGE:** |

**************************************************************************

## COMPLAINT

   **NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **CAROLYN  D. BENOIT** ("*Mrs. Benoit*") of the full age of majority and a resident of the Parish of Lafayette, State of Louisiana, who brings this action for relief pursuant to the provisions of 29 United States Code 1132(a)(1)(B), for declaratory relief pursuant to the provisions of  28 United States Code 2201, and under the provisions of Louisiana Revised Statutes Title 22 Sections 868, 990, 1821(A), 1973 and other applicable Louisiana state laws, to-wit:

### FACTS AND NATURE OF THE CASE

1.    Plaintiff  **CAROLYN  D. BENOIT** ("Plaintiff" or "*Mrs. Benoit*"), is disabled as a result of an injury which was sustained on June 20, 2014, when she fell down stairs at the apartment building where she resided in Lafayette, Louisiana.  Mrs. Benoit's fall aggravated her pre-existing congenital spondylolisthesis of the lumbar region, as well as her existing degenerative disc disease.

2.    Mrs. Benoit brings this civil action against **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON** ("Liberty"),  **L'OREAL USA, INC.** ("L'Oreal")("Sponsor"),

**SALONCENTRIC, INC.** ("SalonCentric"), and **L'OREAL USA REWARDS**, an

unincorporated entity within the Sponsor's business organization and/or administrator for the

**SALONCENTRIC, INC. COMPREHENSIVE WELFARE BENEFITS PLAN** ("Plan")

(collectively "Defendants").    Based upon information and belief, **SALONCENTRIC, INC.** is

a wholly owned subsidiary of **L'OREAL USA, INC.**   Based upon information and belief,

**L'OREAL USA, INC.** is a wholly owned subsidiary of **L'OREAL S.A.**, a publicly traded

company whose stock is traded on the Paris Stock Exchange.   Based upon information and

belief, **L'OREAL USA REWARDS** is an unincorporated entity that serves as the  Plan

Administrator for the **SALONCENTRIC, INC.**, Mrs. Benoit's employer.

3.      At all pertinent times, including June 20, 2014, and for a time thereafter, Mrs.

Benoit's employment remuneration and compensation for the work performed during her

employment with SalonCentric, Inc., included fringe benefits in the form of short term disability

insurance benefits ("STD") and long term disability insurance benefits ("LTD").    Mrs. Benoit

was a "Covered Person" under the terms and provisions of a "GROUP DISABILITY INCOME

POLICY" effective on June 20, 2014, Policy No. GF3-810-259830-01 ("Policy") issued by

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON (hereinafter "Liberty") providing

Long Term Disability income coverages.  The Policy is attached hereto as **Exhibit A.**

L'OREAL USA, INC. is named as the "Sponsor" on the said  "GROUP DISABILITY INCOME

POLICY.  Based upon information and belief, SalonCentric, Inc. made contributions to the

premiums paid for the Policy, and participated in the Plan in numerous ways.

4.      At all pertinent times prior to June 20, 2014, and for a period of time thereafter, Plaintiff

Carolyn Benoit was employed by SALONCENTRIC, INC. working a minimum of 30 regularly

scheduled hours per week as an "outside sales" representative, was a "Class 6" Member eligible

for insurance benefits under the Policy.  Carolyn Benoit had employment duties and

responsibilities as set forth in the Job Description created and adopted by SalonCentric.  Liberty through its claims representative Kelli Cullis obtained Carolyn Benoit's "Job Description" from SalonCentric pursuant to a request via email on December 14, 2014.   At all pertinent times, the Job Description provided the criteria for determination of whether the plaintiff could perform the material and substantial duties of her "Own Occupation" as defined by the policy.   Despite being provided with the "Job Description," persons charged by Liberty with the responsibility of analyzing whether the plaintiff was disabled under the terms of the Policy failed and/or refused to utilize the "Job Description" in making coverage determinations, but rather utilized other criteria.  A copy of the Job Description (and email) is attached hereto as **Exhibit B**.

5.     Mrs. Benoit, who completed the eleventh (11th) grade in high school, has been employed many years in outside wholesale sales of beauty and salon products, including being employed by companies acquired or merged with SalonCentric.  During the last five (5) full years before her fall on June 20, 2014, namely years 2008-2013, Carolyn Benoit's income ranged from a low of $64,162 in 2008 to a high of $77,112 in 2012 (according to W-2s for those years).   In 2013, while employed by SalonCentric, her W-2 showed income of $71,111, slightly less than the year before.   In 2014, the year of her accident, while employed by SalonCentric she earned $50,546 prior to being placed on Short Term Disability ("STD") benefits on or about October 28, 2014. Based upon information and belief, Liberty failed to properly use her earnings to correctly determine the rate of disability benefits which were actually paid to the plaintiff by the Plan.

6.     Due to the injuries she sustained on June 20, 2014, it became apparent in October 2014, that Carolyn Benoit could no longer perform the duties associated with her employment by SalonCentric, plaintiff began drawing short term disability income insurance benefits.  By correspondence from Liberty on various dates in 2014 and 2015, Liberty acknowledged it "***is responsible for managing claims for Short Term Disability (STD) benefits under L'Oreal***

*USA's Group Disability Plan*."   After application and compliance with the various requests for information made by Liberty, according to records provided by Liberty, Liberty made STD benefits payments to Carolyn Benoit as follows:

> From 10/28/14 through 12/29/14 the total amount of $8,474.06;

> From 12/30/14 through 03/31/15 the total amount of $12,541.64;

> From 04/01/15 through 04/10/15 the amount of $1,479.12;

> From 04/11/15 through 04/15/15 the amount of $554.67; and,

> From 04/16/15 through 04/20/15 the amount of $554.67.

Total STD benefits in the amount of $23,604.16 were paid.   Those short term disability benefits payments were calculated by Liberty and "assigned" to a debt collector, Thomas George Associates, Ltd. to make demand upon the plaintiff for reimbursement of those paid benefits under Liberty claim number 3390594.  **Exhibits C, D and F.**

7.     By letter from Liberty dated March 5, 2015, Liberty acknowledged that Liberty  "*is responsible for managing claims for Long Term Disability (LTD) benefits under L'Oreal USA's Group Disability Policy.*" After application and compliance with the various requests for information made by Liberty on various dates, according to claims file records provided by Liberty, Liberty made LTD benefits payments to Carolyn Benoit as follows:

> From 4/19/15 through 5/18/2015 the amount of $3,070.93, with a supplemental check in the amount of $120.56 made at a later time.

> Thereafter, beginning May 19, 2015, through May 18, 2016, Liberty made monthly payments in the amount of $3,173.38.

> Those payments for LTD benefits total $41,272.05.   Those short term disability benefits payments were calculated by Liberty and "assigned" to a debt collector, Thomas George Associates, Ltd. to make demand upon the plaintiff for reimbursement of those paid benefits

under Liberty claim number 5216990.   **Exhibits D, E and G**.

8.      By letter dated June 13, 2016, postmarked June 15, 2016, (**"Termination of Benefits Letter"** or **"TBL"**) Liberty again acknowledged that Liberty  "*is responsible for managing claims for Long Term Disability (LTD) benefits under L'Oreal USA's Group Disability Policy*."   Liberty informed Carolyn Benoit that after having paid benefits as described in the preceding paragraph,  "*We have completed a thorough review of your eligibility for benefits and determined that benefits are not payable.*"   **Exhibit H.**  The Termination Letter recited the definition of "Disability" which differentiated between the "Disability" definition during the first 24 month period (inability to perform "Own Occupation") and thereafter the inability to perform "Any Occupation."   Liberty was aware and had been provided records of Dr. Alan Appley, who performed surgery on Mrs. Benoit August 27, 2015 described as a L5-S1 ALIF with MIS pedicle screws.   Due to post-surgery complications, pain and spasm, Dr. Appley recommended Carolyn Benoit not to return to work in her Own Occupation.  Liberty was timely provided all such required medical documentation.   Nevertheless, the **Termination of Benefits Letter** cited the opinion of an unnamed non-examining physician who opined that Carolyn Benoit could perform her Own Occupation for thirty (30) hours per week.  A copy of the Termination Letter is attached hereto as **Exhibit H.**

9.      The **Termination of Benefits Letter** ("TBL") further provided for a written appeal within 180 days of the June 13, 2016, letter.   **Exhibit H.**

10.     On October 11, 2016, counsel for Plaintiff Carolyn Benoit sent a letter to Liberty by certified mail #7013 2250 0001 5202 8440 requesting a copy of the claim file, including medical and vocational evidence relied upon by Liberty in making decisions relating to the payment or non-payment of disability benefits to Carolyn Benoit.  Other relevant information, including plan and insurance documents, was also requested.   A copy of the letter is attached hereto as

**Exhibit I.**    In response Liberty provided various electronic documents to the plaintiff's counsel on a thumb drive by United States Mail.   The electronic files were all dated October 13, 2016. The postmark indicated that the thumb drive was mailed by Liberty on October 20, 2016.

**Exhibit J.**

11.    Carolyn Benoit filed an appeal with the hard copy containing exhibits and attachments dated December 2, 2016, sent via Certified Mail No. **7008 0150 0000 1691 9889**, and by Fax: 1-603-334-4123 on the same date.    A copy of the Letter of Appeal ("**Appeal**") is attached hereto as **Exhibit K.**

12.    By letter dated February 2, 2017 ("**Appeal Decision**"), Liberty acknowledged that it had completed a review of the appeal by Appeal Review Consultant, Stephanie Berry, a Liberty employee, and we have "***maintained the decision to deny benefits beyond June 10, 2016***."  A copy of the **Appeal Decision** is attached hereto as **Exhibit L**. The Appeal Decision revealed that Liberty employed certain contractors to review records and render opinions, which contrary to the evidence contained in the plaintiff's appeal.  These persons were hired or contracted by Liberty after the appeal was lodged December 2, 2016.   Liberty relied upon those post-appeal opinions to justify termination of LTD benefits. As the Termination Letter recited the termination of benefits was because Carolyn Benoit no longer met the definition of "Disability" (which differentiated between the inability to perform "Own Occupation" and the inability to perform "Any Occupation"), the **Appeal Decision** affirmed termination of benefits based upon Carolyn Benoit's ability to perform her Own Occupation on a part time basis but refused to do so.   This new termination rationale was based upon information not provided to Mrs. Benoit or her attorney prior to the date the appeal was actually due.   Further, the new "opinions" were generated subsequent to the date the plaintiff's appeal was filed with Liberty.

13.    By letter dated February 10, 2017, Carolyn Benoit filed a **Letter of Reconsideration** of

the **Appeal Decision,** which included the deposition of Dr. Alan Appley taken January 25, 2017,

transcribed February 3, 2017.  The letter with referenced exhibits is attached hereto as

**Exhibit M**.  By letter dated February 15, 2017 **("Reconsideration Decision")**, Liberty's Appeal

Consultant, Stephanie Berry (believed to be a Liberty employee) determined that the "deposition

of Dr. Alan Appley does not offer findings to alter our prior decision." **Exhibit N**.   Nonetheless,

the **Reconsideration Decision** referenced "the surveillance on file" never previously provide to

the plaintiff.   Liberty's conflict of interest was evident inasmuch as Liberty was paying the

claim, deciding whether benefits would be approved or terminated, and ultimately determining

whether the appeal and the letter of reconsideration had merit – even to the point of ignoring the

opinions of the actual treating physicians.

14.    Contrary to the requirements of the provisions of 29 CFR 2560.503-1, the plaintiff was

not timely provided a copy of the post-appeal opinion of Dr. David H. Segal dated January 9,

2017, recited in the Appeal Decision, nor a copy of the post-appeal occupational

analysis/vocational review  of Bernadette Cook, an in-house vocational case manager employed

by Liberty dated January 13, 2017 (not even the appearance of exercising a proper fiduciary

relationship).   Further, the **Appeal Decision** and **Reconsideration Decision** further relies upon

evidence not timely provided to the plaintiff, namely surveillance photographs.  The **Appeal**

**Decision** and/or **Reconsideration Decision** (**Exhibit N**) notes that, "The surveillance of her on

file documents her ability to independently operate a car, carry items and get into a truck

unassisted."   Despite several prior requests for a copy of the surveillance, the plaintiff  was not

provided by Liberty to plaintiff's counsel until a DVD was provided by letter dated March 10,

2017 (thus violating the plaintiff's "reasonable opportunity for full and fair review of the claim

and adverse determination," because Liberty failed to provide plaintiff with "new or additional

evidence considered, relied upon, or generated" contrary to the requirements  of 29 C.F.R. §

2560.503-1(d) and (h)(4)(I)-(ii).   Liberty violated plaintiff's rights to rebut the undisclosed

evidence during the actual appeal process.    A copy of the Liberty letter dated February 28,

2017, (**Exhibit O**) acknowledging that the surveillance footage was not previously provided.

15.     Further, the **Appeal Decision** is contrary to and inconsistent with the **Termination of

Benefits Letter**.  The **Termination of Benefits Letter** and the **Appeal Decision** are based upon

different policy language and totally different termination rationale.  Further, the **Appeal

Decision** was based upon new, different and additional "opinions" rendered by undisclosed

"experts" not previously provided to the plaintiff during the 180 day appeal period.

16.     By letter dated February 15, 2017 ("Reconsideration Decision"), Liberty acknowledged

obtaining "***additional reviews***" (those of Dr. David H. Segal and Bernadette Cook)  that "we

deemed necessary to evaluate her claim [appeal]."  The Reconsideration Decision was contrary

to the actual evidence submitted in the appeal and stated:

> "The deposition of Dr. Alan Appley does not offer findings to alter our prior
>
> decision.   We were aware that he completed no-work status notes for her through
>
> May 25, 2016.  As of his January 25, 2017 deposition, Dr. Appley is indicating
>
> that right now she cannot work in her prior employment (job)...we are aware that
>
> she has supported restrictions and limitations with bending, lifting and carrying;
>
> however, these do not preclude her from performing the material (sic) and
>
> substantial duties of her own occupation for at least thirty hours per week as is
>
> normally performed in the national economy."

17.     The **Reconsideration Decision** further provides, "At this time, Ms. Benoit's

administrative right to review has been exhausted; no further review will be conducted by

Liberty and her claim will remain closed."

18.     Noteworthy is that at all times pertinent herein, Liberty failed to exercise its contractual

right to have Plaintiff Carolyn Benoit examined by a physician chosen by Liberty.   Instead,

termination of benefits was based upon opinions expressed by physicians, vocational

rehabilitation specialists, or others which were made upon <u>records</u> <u>review</u> <u>only</u>, not an actual

examination of Carolyn Benoit.

19.    On the other hand, the treating physicians and the vocational expert who actually

examined and tested the plaintiff opined that plaintiff Carolyn Benoit could **<u>NOT</u>** return to her

own occupation on either a full-time or part-time basis.

20.  It is not disputed by Liberty that after a variety of conservative treatments, Dr. Alan Appley

performed surgery on Carolyn Benoit on August 27, 2015, described as a L5-S1 ALIF with MIS

pedicle screws.   Medical records provided to Liberty indicate Carolyn Benoit continues to be

treated for post-surgical pain and spasms in the lower back.   Dr. Alan Appley has opined that

she should **<u>not</u>** return to work.    Carolyn Benoit is disabled under the definition of Disability as

to her "Own Occupation," and medical evidence in the claim record clearly evidences that

Carolyn Benoit is unable to return to her SalonCentric employment with the existing Job

Description.    Further, Ted Deshotels a vocational rehabilitation expert in Lafayette, Louisiana,

performed a vocational evaluation in October 2016 which was made part the administrative

record.  Mr. Deshotels' expert report limited Carolyn Benoit's future employment to sedentary

work if and only if released by Dr. Appley for that purpose.   These documents are included in

the claim file.

21.    Further, Liberty not only had a conflict of interest in exercising the fiduciary duties owed

to the plaintiff, and but intentionally denied the plaintiff an opportunity during the appeal to due

process and to confront with competent evidence the opinions and evidence upon which Liberty

relied, namely the "additional reviews" – Dr. David H. Segal and Bernadette Cook – Liberty

"deemed necessary to evaluate her claim [appeal]," and the surveillance evidence not provided

until March 10, 2017, subsequent to Liberty's closure of the administrative file.

**JURISDICTION AND VENUE**

22.      This Court's jurisdiction is invoked pursuant to 28 USC 1331, 28 U.S.C. § 1337 and 29

U.S.C. § 1132(e) (ERISA § 502(e)).   Plaintiff's claims "relate to" "employee welfare benefits

plan[s]" as defined by ERISA, 29 U.S.C. § 1001 *et seq*. and the subject Benefit Plan constitutes

"plan[s] under ERISA."   The ERISA statute, at 29 U.S.C. § 1133, as well as Department of

Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal

appeal, which has been exhausted.

23.      Venue is proper in the Western District of Louisiana under the provisions of  29 U.S.C. §

1132(e)(2) because at all pertinent times (a)  the plaintiff received short term and long term

disability payments and other benefits (see Paragraphs 6 and 7 above) in Lafayette Parish,

Louisiana; (b) performance of all future obligations, benefits and payments would be made to the

plaintiff in Lafayette Parish, Louisiana; ( c) the duties owed to plaintiff the plaintiff by the

defendants, and the breach of those duties occurred in Lafayette Parish, Louisiana – all within

the United States District Court, Western District of Louisiana.

24.      Further, Liberty, SalonCentric and L'Oreal USA all conduct business within the Western

District of Louisiana, and venue is proper under the provisions of 28 U.S.C. § 1391.   The

plaintiff was employed by SalonCentric as a Sales Consultant, and obtained remuneration and

fringe benefits as a result of her employment in parishes located in the Western District of

Louisiana.   LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("Liberty") conducts

business in and issues policies of insurance within the Western District of Louisiana.   The

Defendants are each subject to the concurrent personal jurisdiction of a federal or state court

located within the Western District of Louisiana pursuant to the provisions of Louisiana Revised

Statutes § 13:3201(A)(1) and (2) because each such non-resident defendant has transacted

business in the State of Louisiana, and has contracted to supply services or things in the State of

Louisiana – particularly within the Western District of Louisiana.   Further, the Defendants are

each subject to the concurrent personal jurisdiction of a federal or state court located within the

Western District of Louisiana a court of this state which may be exercised over a nonresident on

any basis consistent with the constitution of this state and of the Constitution of the United States

as set forth in  Louisiana Revised Statutes § 13:3201(B).

25.      As noted by the Liberty correspondence recited herein above, all administrative

prerequisites and avenues of appeal have been exhausted, and this matter is  now properly before

this court for judicial review.

## PARTIES

26.      Plaintiff, Carolyn Daigle Benoit, (hereinafter "Plaintiff" or "Carolyn Benoit" or "Mrs.

Benoit"), is currently and was at all relevant times, a resident of Lafayette Parish, Louisiana.

27.      Defendant Liberty Life Assurance Company of Boston (hereinafter  "Liberty"), is  an

insurance company authorized to transact the business of insurance in this state, and may be

served with process through the Louisiana Secretary Of State, 8585 Archives Avenue, Baton

Rouge, LA 70809.

28.      Defendant Liberty is the party obligated to pay benefits and to determine eligibility for

benefits under Group Long Term Disability Policy No. GF3-810-259830-01 (the

"**Policy**")(Exhibit A), issued by Liberty to SalonCentric, Inc., and/or L'Oreal USA, Inc.

29.      Defendant L'OREAL USA, Inc. (hereinafter "L'OREAL") was originally identified by

Liberty  as the Plan Administrator for the ERISA plan under which the Policy paid benefits.

L'OREAL is  the parent of  Defendant SalonCentric, Inc.   Upon information and belief,

L'OREAL is a Delaware  Corporation, whose principal headquarters are located at 575 Fifth

Avenue, New York, New  York, 10017.  L'OREAL may be served  through its registered agent

for service of process at:   Corporation Service Company, 80 State Street, Albany, New York,

12207.   L'OREAL USA, Inc. conducts business within the Western District of the State of

Louisiana.

30.     Defendant SalonCentric, Inc. and  L'OREAL USA Rewards ("SalonCentric") have

recently been  identified as the Plan Administrator for The SalonCentric Inc. Comprehensive

Welfare Benefits Plan (the "Plan").  SalonCentric is a wholly owned subsidiary of L'OREAL,

and has designated the  following as agent for service of process:  SALONCENTRIC INC.,

Registered Office in Louisiana, 501 Louisiana Avenue,        Baton Rouge, LA 70802, having a

Principal Business Establishment in Louisiana at 320 Somerulos Street, Baton Rouge, LA

70802-6129 whose registered agent for service of process is Corporation Service Company, 501

Louisiana Avenue, Baton Rouge, LA.   SalonCentric conducts business within the Western

District of the State of Louisiana.

## FACTS

31.     Plaintiff by virtue of her employment was enrolled in the Plan, which is an  ERISA

employee welfare benefit plan.   Benefits under the Plan are insured by Liberty under the Policy,

issued by Liberty to SalonCentric.  L'Oreal USA, Inc. is listed as Sponsor on the GROUP

DISABILITY INCOME POLICY.   Plaintiff is a participant or beneficiary of the Plan.

Plaintiff has been and continues to be disabled as defined by the provisions of the Plan and

insurance relevant policies.

32.     As noted above, Plaintiff filed an application for  Short Term Disability Benefits (STD)

under the  Plan.  Liberty was the fiduciary charged with determining Plaintiff's eligibility for

STD  benefits under the Plan, and Liberty awarded her the full amount of benefits allowable

under the  STD portion of the Plan.   Because her condition did not improve, Liberty

subsequently approved Mrs. Benoit's  claim for LTD benefits under the Plan.

33.     As indicated herein above, Liberty subsequently terminated Plaintiff's LTD benefits.

The entity which made the decisions to deny benefits would pay  any benefits due  out of its own

funds.   The entity which made the decisions to deny benefits owed Plaintiff duties as a

fiduciary of the ERISA Plan, including the duty of loyalty.

34.     The entity (Liberty) which made the decisions to deny benefits was under a perpetual

conflict of interest because the benefits would have been paid  out of its own funds.

35.     The entity  (Liberty) which made the decisions to deny benefits allowed its concern over

its  own funds to influence its decision-making.

35.     The entity which made the decisions to deny benefits breached its fiduciary duties  to

Plaintiff, including the duty of loyalty.


**FIRST CAUSE OF ACTION**
**FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)**

PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully

stated herein, and pursuant to the provisions of 29 U.S.C. §§ 1132(a)(1)(B) avers further that:

36.     Under the terms of the Plan and policy, Defendant agreed to provide Plaintiff with  LTD

benefits in the event that Plaintiff became disabled as defined by the Plan.

37.     Plaintiff is disabled and entitled to benefits under the terms of the Plan.  At no time was

the plaintiff able to continue to work part-time in her Own Occupation but intentionally failed or

refused to do so.   At all pertinent times, plaintiff followed the advice for treatment and advice

concerning her employment activities consistent with the treating physicians' recommendations.

38.     Defendant failed to provide benefits due under the terms of the Plan, and those denials of

benefits to Plaintiff constitute breaches of the Plan.

39.     The decisions to deny benefits were wrong under the terms of the Plan.

40.     The decisions to deny benefits and decision-making processes were arbitrary and

capricious.

41.     The decisions to deny benefits were influenced by the Defendant's financial  conflict of interest.

42.     The decisions to deny benefits were not supported by substantia l evidence in the record.  The decision to terminate benefits were contrary to the recommendations of her treating physicians.

43.     As a direct and proximate result  of the aforementioned conduct of the Defendant  in failing to provide benefits f or Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

44.     As a direct and proximate result  of the aforementioned conduct of the Defendant in failing to provide benefits f or Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and  other damages, for a total amount

45.     As an ERISA fiduciary, L'OREAL and/or its wholly owned subsidiary SalonCentric were responsible for providing timely, accurate and complete information and documents to Plaintiff.   L'OREAL and/or its wholly owned subsidiary SalonCentric delegated its fiduciary duties in whole or in part to Liberty.

## SECOND CAUSE OF ACTION

PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein, and AVERS:

46.     The"GROUP DISABILITY INCOME POLICY" effective on June 20, 2014, Policy No. GF3-810-259830-01 ("Policy") issued by LIBERTY LIFE ASSURANCE COMPANY OF BOSTON (hereinafter "Liberty") providing Long Term Disability income coverages ("The Plan") effective January 1, 2009, was delivered to plaintiff, a former employee of Beauty Alliance, Inc. ("Beauty Alliance"), after Beauty Alliance was purchased by SalonCentric, Inc.,

and/or L'OREAL USA, Inc. It is believed that Plaintiff Carolyn Benoit became a Plan member on or before January 1, 2011. The Policy was delivered to the Plaintiff in the State of Louisiana, and was part of an ERISA Plan offered and sponsored by her employer for employment and business conducted within the State of Louisiana.

47. LSA–R.S. 22:990 regulates individual and group disability loss of income policies which provide loss of income protection, and such policies of insurance must be consistent with the provisions and definitions contained in LSA–R.S. 22:990. The Policy described herein above are contrary to the provisions of LSA–R.S. 22:990(B)(1) which after the first 24 months defines disability based upon an individual's inability to perform "Any Occupation". LSA–R.S. 22:990( C ) further provides that a general definition of "disability" cannot be more restrictive than allowed therein. This statute is applicable under the Insurance Savings Clause contained in 29 U.S.C. §§ 1144, as it is a state statute that regulates insurance, and affects the risk pool and insurance premiums and rates for such insurance within the State of Louisiana. See **Ky. Ass'n of Health Plans v. Miller**, 538 U.S. 329, 341-342, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003) "**Miller**" or "**Miller case**", which states: "Today we make a clean break from the McCarran-Ferguson factors and hold that for a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. See Pilot Life, supra, at 50, UNUM, supra, at 368; Rush Prudential, supra, at 366. Second, as explained above, the state law must substantially affect the risk pooling arrangement between the insurer and the insured." **Miller**, **Ibid**. The provisions of LSA–R.S. 22:990 meet these two prongs and are applicable to the Policy.

48. The Termination of Benefits Letter dated June 13, 2016, therefore, materially and

substantially misrepresented the coverage provisions of the Plan and the Policy.  The provisions of LSA–R.S. 22:1973(A)  requires that an insurer owes to his insured a duty of good faith and fair dealing.  Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach. Section B provides that any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A, including (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue; *** Penalties and attorneys fees are owed in accordance with this insurance regulation.   Further, LSA–R.S. 22:1821 provides for additional penalties, attorneys fees, and costs on amounts due and disability payments delayed as a result of Liberty's breaches.

49.     Defendants are responsible for penalties, interest, attorneys fees and taxable costs as provided under both state and federal law.

### THIRD CAUSE OF ACTION: DECLARATORY RELIEF

Plaintiff seeks declaratory relief under the provisions of **28 U.S.C. § 2201** relating to the following:

50.     PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein, AND FURTHER AVERS:

Liberty through its debt collection contractor  Thomas George Associates, Ltd. has made demand upon the plaintiff for reimbursement or subrogation of all payments for LTD benefits paid to Carolyn Benoit in the total amount of $41,272.05; and, Liberty through its debt collection contractor Thomas George Associates, Ltd. has made demand upon the plaintiff for reimbursement or subrogation of all payments for STD benefits paid to Carolyn Benoit in the

amount of $23,604.16.  **Exhibit P.**   However, by written correspondence delivered by electronic

mail on May 11, 2017, Thomas George Associates, Ltd. ("TAG") informed counsel for Carolyn

Benoit  that Thomas George Associates, Ltd. has "now voluntarily removed itself from the

equation, in exchange for our firm not being named as a defendant" in the instant lawsuit, and

would inform Liberty of  TAG's decision to withdraw as Liberty's "recovery agent."  **Exhibit Q.**

Nevertheless, Carolyn Benoit seeks declaratory relief in determining whether any or all of the

monies described herein STD and LTD benefits paid by Liberty under the terms of  the"GROUP

DISABILITY INCOME POLICY" effective on June 20, 2014, Policy No. GF3-810-259830-01

("Policy") issued by LIBERTY LIFE ASSURANCE COMPANY OF BOSTON.

51.     Carolyn Benoit acknowledges that she has received a sum from third parties in settlement

of the lawsuit filed under CIVIL ACTION NO. 15-1907 filed in the Western District of

Louisiana ("**Third Party Claim**").   Carolyn Benoit has received a subrogation/reimbursement

demand from Liberty through its agent for repayment of LTD benefits in the amount of

$41,272.05 and STD benefits in the amount of $23,604.16.

52.     Counsel for Carolyn Benoit has placed the sum of $64,876.21 in escrow pending

resolution of the demand made by Liberty through its agent for reimbursement/subrogation, and

this court's determination as to whether any reimbursement is owed, and if so, the amount owed.

**Exhibit P.**

53.     At all pertinent times during the litigation of the **Third Party Claim**, Liberty was aware

of the prosecution of the **Third Party Claim** through its recovery agent, and counsel for the

plaintiff had a number of communications with Liberty's recovery agent TAG, including a letter

suggesting that Liberty intervene in the **Third Party Claim** to assert any interests Liberty may

wish to assert.   Counsel for the plaintiff supplied Liberty through its agent TAG with a copy of

Louisiana Insurance Commissioner Directive 175, January 8, 2003; a copy of the appeals

decision in "American Postal Workers Union, AFL-CIO Health Plan versus Tippet," Docket No.

11-881, Louisiana Third Circuit Court of Appeal (2011); and, a copy of the appeals decision in

"Benefit Recovery, Inc. versus James J. Donelon," Docket 07-30414, United States Fifth Circuit

Court of Appeals.   These documents were communicated for the purpose of asserting the fact

that under Louisiana law, the plaintiff must be made whole in order for a subrogation/

reimbursement provision of an insurance policy to have effect, and that where a claimant has

been made whole, the rights of subrogation/reimbursement are unenforceable.   Where a

claimant has been made whole, the subrogation/reimbursement rights of the insurance company

are  subject to diminishment by its pro-rata share of attorneys fees and taxable costs of litigation

for the collection of any monies from a negligent third party.

54.     Carolyn Benoit has not been made whole by settlement of the **Third Party Claim**, and

therefore, Liberty has no right of subrogation/reimbursement under the policy.   Further, the

Policy itself contains a statement that the subrogation/reimbursement language in the Policy

"***will not apply where prohibited by law***."   In Louisiana, subrogation/reimbursement provisions

in insurance policies are prohibited in all cases where the claimant receives funds in settlement

or judgment but is not "made whole."

55.     Further, the contractual subrogation/reimbursement provisions in the Policy is

conditional, and specifically requires that ... "***b.  such settlement or judgment specified an***

***amount or portion of payment that represents payment for such benefits;***".   The settlement of

the **Third Party Claim** referenced herein was made and recited in open court, and such

settlement of the **Third Party Claim** recited in open court failed to specify any amount or any

specific portion of the settlement to be paid to Liberty in subrogation/reimbursement for STD or

LTD benefits paid to Carolyn Benoit.   As that contractual provision in the Policy was not

fulfilled, Liberty has no right of subrogation/reimbursement under the express terms of the

Policy.

56.     Further, additional language in the "GROUP DISABILITY INCOME POLICY", No.

GF3-810-259830-01 ("Policy")(Exhibit A) issued by LIBERTY LIFE ASSURANCE

COMPANY OF BOSTON relating to Liberty's "Rights to Reimbursement," is vague and

ambiguous and should be construed against the drafter Liberty.  One of the

subrogation/reimbursement conditions in the Policy requires as a condition of reimbursement the

following:  "*a. the Covered Person received payment for loss of time because of a third party*

*settlement or court judgment;*".   This condition of reimbursement is vague and ambiguous.

Mrs. Benoit was paid benefits under the ERISA Plan for "disability" as defined in the Policy,

and the term "*loss of time*" is neither defined in the Policy nor described or used in the definition

of "disability," a term which is defined in the Policy.  Therefore, the first pre-condition for

recovery by Liberty is vague, ambiguous.   In any event, whatever the language of the

subrogation/reimbursement first pre-condition was intended to say, that pre-condition has not

been fulfilled.

57.     For the reasons set forth in this Cause of Action, the court should render judgment

against Liberty decreeing that Liberty has no rights to be reimbursed or subrogated to monies

from the proceeds of the settlement of the Third Party Claim.

58.     Further, plaintiff demands that Liberty pay judicial interest on the sum of $64,876.21

from the date such funds were placed in escrow, and attorneys fees and costs resulting from

having to defend Liberty's wrongful assertion of subrogation/reimbursement rights.  Further, plaintiff demands that Liberty pay reasonable attorneys fees in connection with having to file suit to defend against the wrongful assertion of a lien or privilege against monies paid in settlement to Carolyn Benoit, including the sequestration of those funds in escrow during the pendency of these proceedings.

59.    Further, to the extent that LTD benefits are reinstated, and past LTD benefits are owed by Liberty, those amounts constitute a set-off.

**FOURTH CAUSE OF ACTION: HEALTH CARE PREMIUMS**

60.    Plaintiff seeks declaratory relief under the provisions of **28 U.S.C. § 2201** relating to the following:   PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein, AND FURTHER AVERS:

61.    Based upon information and belief, during the period of time that plaintiff was disabled and receiving LTD Benefits, the **SALONCENTRIC, INC. COMPREHENSIVE WELFARE BENEFITS PLAN** ("Plan") paid the premiums for health insurance provided to Carolyn Benoit under the Plan.

62.    By letter from Conexis on behalf of SalonCentric, once Liberty declared that Carolyn Benoit was no longer disabled and could return to work, the premiums for the healthcare insurance provided under the Plan were no longer paid.

63.    Carolyn Benoit has been damaged as a result, and is owed back benefits and premiums paid under COBRA, as well as all future payments for premiums owed for health insurance coverage for herself and her family which were previously paid by the Plan.

64.    Further, plaintiff demands that Liberty pay attorneys fees and costs resulting from this demand, and judicial interest on all amounts Carolyn Benoit paid for those health insurance premiums.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

### On Plaintiff's First Cause of Action:

1.    A finding in favor of Plaintiff against Liberty;

2.    Damages in the amount equal to the disability income benefits to which she was  entitled through the date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3.    Prejudgment and post-judgment interest;

4.    An Order requiring the Plan or appropriate Plan fiduciaries to pay continuing  benefits in the future so long as Plaintiff remains disabled under the terms of the Plan, as well as  any other collateral benefits to which she might be entitled on the basis of being disabled under  the LTD plan, in the future so long as Plaintiff remains disabled under the terms of the Plan;

5.    Plaintiff's reasonable attorney fees and costs; and

6.    Such other relief as this court deems just and proper.

### On Plaintiff's Second Cause of Action:

1.    Penalties, attorneys fees, and taxable costs to the maximum extent allowed under state law for misrepresentation of the coverage provisions, and termination of benefits due and owing resulting from defendants' breaches of duty.

2.    Plaintiff's reasonable attorney fees and costs;

3.    Prejudgment and post-judgment interest; and

4.    Such other relief as this court deems just and proper.

### On Plaintiff's Third Cause of Action:

1.    A declaratory judgment decreeing that Liberty is not owed any sums in subrogation or reimbursement for STD nor LTD benefits previously paid to Carolyn Benoit by Liberty.

2.    A declaratory judgment decreeing that the reimbursement/subrogation portions of the

Policy is vague, ambiguous and therefore unenforceable.

3.      A declaratory judgment decreeing that the reimbursement/subrogation portions of the Policy contain conditions which were not fulfilled, and consequently Liberty is not owed any sums in subrogation or reimbursement because the specific provisions of the policy were not met.

4.      Damages for the wrongful assertion of a lien or privilege asserted against proceeds monies owed to Carolyn Benoit which were sequestered during the pendency of this litigation.

5.      Alternatively, that Liberty is owed only such sums in subrogation or reimbursement, after first meeting obligations for proportionate share of attorneys fees and costs of litigation.

**On Plaintiff's Fourth Cause of Action:**

1.      A finding in favor of Plaintiff against Liberty;

2.      Damages in the amount equal to the health insurance premiums to which she was entitled through the date of judgment, for unpaid premiums and future health care premiums during the period of Carolyn Benoit's disability; and,

3.      Prejudgment and post-judgment interest.

Plaintiff further prays for all just and equitable relief, etc.

Respectfully submitted,

/s/      J. Lomax Jordan, Jr.

J. LOMAX JORDAN, Jr., #07518

VICTOR R. A. ASHY #33709

1817 West University Avenue

Lafayette, Louisiana 70506

Ph:   337-233-9984

Fax: 337-233-5312

maxjordan@cox.net